IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CR-23-183-1-PRW |
| | ) | |
| CANDY HANZA, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

## *Background*

On May 3, 2023, Defendant Candy Hanza was indicted on one Count of Bribing a Public Official, six Counts of Wire Fraud, and four Counts of Money Laundering. Ms. Hanza entered into a plea agreement with the United States whereby she would plead guilty to the bribery Count, with an acknowledgement that the conduct described in the other Counts was relevant and the same course of conduct as the offense of conviction. The Court heard and accepted Ms. Hanza's guilty plea on July 28, 2023, and granted the United States' motion to dismiss all but the bribery Count.

A Pre-sentence Investigation Report was prepared, and Ms. Hanza appeared for sentencing on January 19, 2024. The Court ruled on objections to the PSR, and the parties agreed that the applicable guideline range was 70 to 87 months' imprisonment. After hearing arguments from both sides, the Court determined that a significant downward variance was warranted to reach an appropriate sentence. The Court sentenced Ms. Hanza

1

to 18 months' imprisonment but withheld judgment as to the restitution and forfeiture amounts. An evidentiary hearing was set to work through the complexities of the offense conduct. In broad strokes, that conduct looked like this:[1]

Ms. Hanza was the General Manager of the Comfort Suites hotel in Lawton, Oklahoma. Ms. Hanza's co-defendant, Alfred Palma, was the Ordering Officer for a training program at Fort Sill, a United States Army Post near Lawton. In his role as Ordering Officer, Mr. Palma was charged with arranging off-post accommodations for visiting soldiers as needed. Mr. Palma had a duty to neutrally divvy up soldier stays between the hotels in the area that had entered into purchase agreements with the Army. Starting around October 2019, Ms. Hanza began bribing Mr. Palma to favor Comfort Suites by sending more soldiers its way. In total, Ms. Hanza paid Mr. Palma $103,200.

Before the bribes started, Ms. Hanza began working to profit from soldier stays at Comfort Suites. Under the existing purchase agreements, the contract rate paid out by the Army was $90 per soldier, per night. Ms. Hanza began running the Army payments through her own travel agency business, Endeavor Travel, and then paying Comfort Suites $74 per soldier, per night. In addition, Ms. Hanza began coordinating with other hotels in the area that did not have contracts with Fort Sill. When the contract hotels were full, Ms. Hanza arranged for soldiers to stay the night at these non-contract hotels. Because the government purchase card could not be used to pay for services from the non-contract hotels, Ms. Hanza ran these payments through Endeavor Travel as well. Again, Ms. Hanza, through Endeavor

---

[1] Facts generally taken from Ms. Hanza's Final PSR (Dkt. 47).

2

Travel, charged the Government $90 per soldier, per night, and paid out $74 per soldier, per night, to the participating non-contract hotels.

### *Restitution*

At the sentencing hearing the United States initially argued for restitution in the amount of $504,689.38. This amount represented the total number of soldier stays[2] multiplied by the $16 difference kept by Endeavor Travel on each transaction. Defendant argued that restitution should be $0, as she insisted that Comfort Suites' owners had known about and acquiesced in the arrangement, and therefore had suffered no loss.

After a brief recess, the parties informed the Court that they had agreed on a gross restitution amount of $361,252.04. This amount used the same method as the United States' initial ask, adjusted to account only for soldier stays at Comfort Suites.[3] Defendant represented that she wished to present evidence of setoffs that could be factored in to reduce the gross amount.[4] The Court set an evidentiary hearing to consider additional evidence and argument.

---

[2] Determined by total payouts from the government purchase card to Endeavor Travel divided by the $90 contract rate.

[3] None of the non-contract hotels filed a Declaration of Victim Losses seeking restitution.

[4] In the restitution context, "offset" or "setoff" generally refer to two provisions of the MVRA. *See United States v. Martinez*, 610 F.3d 1216, 1230–31 (10th Cir. 2010). First, the requirement that restitution be paid to an insurer or similar source that has already compensated a victim for a loss. 18 U.S.C. § 3664(j)(1). Second, the requirement that any restitution amount be reduced if the victim receives compensatory damages for the same loss in a civil proceeding. 18 U.S.C. § 3664(j)(2). At the evidentiary hearing, the parties used "setoff" to refer more generally to circumstances that should be taken into account when determining the loss amount. In other words, the parties' agreement as to loss amount didn't really mean much, as the Defendant spent the entire hearing arguing that the actual loss amount was quite different than the "gross" amount they had agreed upon. The Court

The evidentiary hearing took place on March 1, 2024. Ms. Hanza herself took the stand to answer questions about her proposed setoffs, which fell into several buckets including wages owed, credit card fees, and other expenses. Defense counsel introduced several hundred pages of exhibits in support, largely consisting of spreadsheets, text messages, and screenshots of financial account statements. The United States lodged a general objection to the relevance of Ms. Hanza's testimony and exhibits, as well as an objection to the authenticity of some exhibits. The Government's position was that none of Ms. Hanza's proposed buckets, with the possible exception of credit card fees, could appropriately be applied to set off the restitution amount.

The Mandatory Victims Restitution Act ("MVRA") requires the Court to "order . . . that the defendant make restitution to the victim" of "an offense against property under this title . . . including any offense committed by fraud or deceit."[5] "Restitution is not intended to punish defendants or to provide a windfall for crime victims, but rather the ensure that victims, to the greatest extent possible, are made whole for their losses."[6] In cases where the direct return of property is impracticable, the defendant must be ordered to pay an amount equal to the value lost.[7]

---

thus uses the term "setoff" in that general sense, rather than the statutory senses, throughout.

[5] 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii).

[6] *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009) (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993)).

[7] 18 U.S.C. § 3663A(b)(1)(B).

The MVRA itself does not define "value."[8] Recognizing that assessing value is "not an exact science,"[9] the Tenth Circuit has approved a "flexible approach."[10] That approach "allows the district court to determine in each circumstance the best measure of value for the purpose of calculating the actual loss in awarding restitution."[11] In making that determination, "a sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim."[12] "The MVRA does not require a court to calculate a victim's actual loss with 'exact' precision," but it "undoubtedly requires *some* precision."[13] Ultimately, "[r]egardless of the valuation method chosen, 'the controlling metric for an award of restitution pursuant to the MVRA *in every case* is *actual* loss suffered; nothing more, nothing less.'"[14]

The evidentiary record before the Court is underwhelming considering the complexity of this case. On the United States' end, the valuation of loss is ultimately grounded in Endeavor Travel's accounting records. A certain amount of money came in via the government purchase card, and a certain amount of money went out to Comfort Suites and the non-contract hotels. Because the high-level goal of the scheme was

---

[8] *United States v. Howard*, 887 F.3d 1072, 1076 (10th Cir. 2018).

[9] *Parker*, 553 F.3d at 1323.

[10] *Howard*, 887 F.3d at 1076.

[11] *Id.* (quoting *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009)).

[12] *Id.* (quoting *James*, 564 F.3d at 1246).

[13] *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015) (cleaned up).

[14] *Howard*, 887 F.3d at 1077 (quoting *Ferdman*, 779 F.3d at 1139).

skimming $16 per soldier, per night, some back-of-the-envelope math turns up the $361,252.04 value.[15]

Many facts that could further illuminate the picture are lacking. For example, other than a wholly-unsupported restitution claim of $1,103,862.55 (since withdrawn) Comfort Suites has not participated in this process. According to the PSR, Comfort Suites indicated at one point that it would provide documentation to substantiate its actual losses.[16] The only materials received bore "no apparent correlation to the losses claimed."[17]

In addition, while the $361,252.04 value accounts for all the soldier stays at Comfort Suites, it is unclear whether the $16 skimmed from each stay converts directly into an equivalent loss. Ms. Hanza agreed that the conduct underlying the dismissed Wire Fraud and Money Laundering counts was relevant to the Bribery charge she pleaded to. That relevance is strongest for those excess soldier stays sent Comfort Suites' way as a result of the bribery scheme. By the same token, those excess stays generated $74 per soldier, per night in income for Comfort Suites; income that it would not have but for the bribery scheme.

---

[15] $2,838,877.75 was paid from the government purchase card to the Endeavor Travel account. Dividing by $90 results in approximately 31,543 soldier stays. Multiplying by $16 results in the total money skimmed, a value of $504,689.38. Based on the payouts from the Endeavor Travel account, approximately 72% of the soldier stays were at Comfort Suites, while the remainder were at the non-contract hotels. Therefore, the portion of the $504,689.38 attributable to Comfort Suites is $361,252.04.

[16] Final Presentence Investigation Report (Dkt. 47), at 9 & n.1.

[17] Final Presentence Investigation Report (Dkt. 47), at 9 & n.1.

The Court is not equipped to estimate how much of that income, if any, represented a profit for Comfort Suites. Such a determination would require facts and records that neither party has provided. That each soldier stay represented a flat, uniform loss of $16 regardless of circumstance seems unlikely. The accounting evidence presented, standing alone, falls short of satisfying the United States' burden to prove the loss amount. But here, that evidence does not stand alone because Ms. Hanza has agreed that $361,252.04 represents at least a baseline valuation of Comfort Suites' total loss, subject to her proposed setoffs. The Court must give some weight to that agreement, which provides support to the United States' evidence and calculations. Accordingly, the Court finds that $361,252.04 is the baseline actual loss suffered by Comfort Suites.

Next, the Court turns to Ms. Hanza's evidence and arguments for setoffs from the baseline restitution amount. Collectively, Ms. Hanza's proposed setoffs greatly exceed the baseline amount, which would effectively zero out restitution.[18] However, the Court finds that most of Ms. Hanza's proposals bear no relation to the loss at issue here. For example, Ms. Hanza claims that Comfort Suites was behind on paying her wages as a hotel employee for the last several years, a claim she substantiates via a contract apparently entered into in 2009, and W-2 forms beginning in 2012.[19] Along similar lines, Ms. Hanza asks for the restitution amount to be reduced to account for various expenses needed to keep the hotel

---

[18] Ex. 1 (Dkt. 72-1) (claiming $127,184.36 in missed wages); Ex. 2 (Dkt. 72-2) (claiming $120,531.83 in credit card fees); Ex. 3 (Dkt. 72-3) (claiming $184,380.00 in unpaid spraying invoices); Ex. 4 (72-4) (claiming $43,495.57 in other unpaid expenses); Ex. 5 (Dkt. 72-5) (claiming $45,010 in Endeavor Travel wages)

[19] Ex. 1 (Dkt. 72-1).

running, which she allegedly took on herself. Those expenses include $184,380.00 for "spraying" (i.e., disinfecting) services that were provided by a company started by Ms. Hanza and staffed by her husband and son.

Ms. Hanza may indeed have valid claims to recover such lost wages or unpaid expenses from Comfort Suites. She is of course welcome to pursue those claims in a separate proceeding.[20] However, these amounts bear no conceivable relation to the fraud scheme at issue and the loss alleged here. When pressed to connect the dots at the evidentiary hearing, Ms. Hanza's counsel demurred, falling back on a general sense of injustice at these alleged unpaid obligations.

The one category of Ms. Hanza's proposed setoffs that bears a possible connection to the offense conduct and loss are the claimed credit card fees. Ms. Hanza argues that these fees should set off the restitution amount because in the absence of the skimming arrangement, they would have been absorbed by Comfort Suites when the government purchase card was charged through their account. Comfort Suites never would have realized a gain from those fees, so effectively awarding them in the form of restitution would be a windfall, says Ms. Hanza.

At the evidentiary hearing, the United States maintained that the credit card fees should not be considered a setoff under the law. The Government's position was that swiping the credit card through Endeavor Travel was an essential part of the scheme to defraud Comfort Suites, and therefore should not count against Comfort Suites' restitution.

---

[20] *See United States v. Cupit*, 169 F.3d 536, 540 n.3 (8th Cir. 1999).

The Government did not dispute the fact that credit card fees were paid as part of these transactions, though for reasons discussed below it did question the amount of fees paid. The United States also agreed that the credit card fees represented the most reasonable of the setoff proposals, and counsel for the Government did not specifically object to the relevance of the associated exhibit.[21]

Turning to that exhibit, several problems become apparent. The first few pages consist of spreadsheets apparently created by Ms. Hanza that purport to track payments made from Endeavor Travel to Comfort Suites and the non-contract hotels, as well as a "credit card fees" value that does not distinguish between the hotels.[22] Following the spreadsheets are approximately forty "card processing statements."[23] These documents are on Liberty National Bank letterhead, were apparently mailed to Endeavor Travel, and present a "statement period" date range and a "fees charged" amount. So far as the Court can work out, there is no way to determine from the processing statements whether the "fees charged" represent credit card fees at all, much less fees specifically related to the government purchase card. In her testimony, Ms. Hanza also stated that some portion of the alleged fees were for soldier stays at the non-contract hotels, but that she had not broken them out from the fees related to Comfort Suites. Applying the same ratio used by the

---

[21] As discussed above, the United States noted a general objection to the relevance and authenticity of Ms. Hanza's testimony and exhibits. However, all exhibits other than the credit card fee exhibit (Dkt. 72-2) were admitted over renewed, specific relevance objections.

[22] Ex. 2 (Dkt. 72-2), at 1–13.

[23] Ex. 2 (Dkt. 72-2), at 14–51.

United States to calculate Comfort Suites' portion of the total soldier stays, of Ms. Hanza's total claimed credit card fee amount of $120,531.83, $86,275.58 would be attributable to Comfort Suites.

Under the Tenth Circuit's flexible approach, the Court sees no reason why credit card fees should be categorically excluded from a determination of actual loss. The Court has not turned up another case to consider the issue under similar legal standards and factual circumstances.[24] Here, the same credit card that should have been charged $90 by the victim's account, was instead charged $90 by the defendant's account. No one disputes that the same, or at least similar, credit card fees would be incurred either way. In this context, the Court finds that it is appropriate to take these fees into account when determining the restitution amount.

The Court takes seriously its duty to make victim Comfort Suites whole. To do so, the Court must determine Comfort Suites' "*actual* loss suffered: nothing more, nothing less."[25] The Court has before it a relatively abstract calculation of a gross restitution amount of $361,252.04. While the Court might prefer a more concrete evidentiary basis, that amount is supported by Ms. Hanza's agreement. As for the credit card fee "setoffs"—really just another aspect of the loss determination—the Court is left with a collection of

---

[24] *See, e.g.*, *United States v. Clavielle*, 429 F. App'x 617 (7th Cir. 2011) (unpublished) (defendant fraudulently obtained credit cards using victims' information, was required to pay restitution equal to total debt incurred, including fees); *F.T.C. v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 379–86 (D. Conn. 2009) (not allowing an offset for credit card fees and other expenses in the equitable restitution context where the governing metric was defendant's unjust gain, rather than victim's loss).

[25] *Howard*, 887 F.3d at 1077 (quoting *Ferdman*, 779 F.3d at 1139).

documents of questionable foundation, produced by and introduced through Ms. Hanza herself. Yet the United States opposed consideration of the credit card fees on primarily a legal, rather than factual, basis. For the reasons explained above, the Court finds no legal barrier to taking the credit card fees into account when determining the actual loss. And whatever infirmities there may be in Ms. Hanza's evidence and the total fee amount of $86,275.58 attributed to Comfort Suites, there is no evidence in the record to gainsay it.

The Court may not award restitution in an amount greater than the loss suffered, creating a windfall.[26] Nor may the Court award a lesser amount, and thereby fail to fulfill restitution's core purpose of making the victim whole.[27] And, of course, the Court may not render a judgment that is arbitrary or capricious.[28] After careful consideration of the evidence and arguments presented, and taking into account the agreements between the parties, the Court finds that restitution is owed in the amount of $274,976.46. That value represents the gross amount of $361,252.04 skimmed from soldier stays at Comfort Suites, less $86,275.58 in credit card fees that would have been incurred in any event. The total restitution amount will be apportioned between Ms. Hanza and her co-defendant Mr. Palma.[29] Mr. Palma has previously agreed that he is responsible for $103,200.00 in

---

[26] *Parker*, 553 F.3d at 1323.

[27] *Id.*

[28] *See United States v. Friedman*, 554 F.3d 1301, 1308 (10th Cir. 2009).

[29] 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

restitution. Ms. Hanza would therefore be responsible for $171,776.46. The Court finds that this apportionment appropriately reflects the level of contribution to the victim's losses by each defendant.

### *Forfeiture*

At the evidentiary hearing, the parties agreed to a forfeiture amount of $103,200.00, equal to the value of the bribes paid by Ms. Hanza.

### *Conclusion*

In accordance with the above discussion, the Court hereby **ORDERS** Defendant Candy Hanza to pay $171,776.46 to:

> Comfort Suites
> 201 SE Interstate Drive
> Lawton, Oklahoma 73501

If restitution is not paid immediately, Ms. Hanza shall make payments of 10% of her quarterly earnings during the term of imprisonment. Upon release, Ms. Hanza shall make payments of the greater of $300.00 per month or 10% of her gross monthly income, as directed by the probation officer. Payments are to commence not later than 30 days after release from confinement. The Court further **ORDERS** Defendant Hanza to forfeit to the United States, in accordance with the preliminary order of forfeiture (Dkt. 56), a money judgment of $103,200.00. The Judgment and Commitment filed on January 19, 2024, will be amended to reflect this Order.

**IT IS SO ORDERED** this 20th day of March 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE